UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

U<small>KPAI</small> I. U<small>KPAI</small>,

    Plaintiff,

v.

C<small>ONTINENTAL</small> A<small>UTOMOTIVE</small> S<small>YSTEMS</small> US, I<small>NC</small>.,

    Defendant.

_____/

Case No. 17-cv-12428

U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small> C<small>OURT</small>
J<small>UDGE</small>
G<small>ERSHWIN</small> A. D<small>RAIN</small>

## **OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#104]**

### I. I<small>NTRODUCTION</small>

This case involves an employment discrimination dispute. Plaintiff Ukpai I. Ukpai alleges that Defendant terminated his employment due to racial and national origin discrimination. Before the Court is Defendant Continental Automotive Systems US, Inc.'s ("Continental") Motion for Summary Judgment. Dkt. No. 104. For the reasons discussed below, this Court will grant Defendant's Motion.

### II. F<small>ACTUAL</small> B<small>ACKGROUND</small>

Plaintiff Ukpai I. Ukpai is an engineer who was born in Nigeria. Dkt. No. 120, pg. 8 (Pg. ID 5583). He moved to the United States in 1995 and has obtained American citizenship while in the United States. *Id.* Plaintiff began working for

Defendant Continental in 2013. Dkt. No. 35-1, pg. 11 (Pg. ID 301). In October 2015, Defendant sent Plaintiff to work at the Kansas City Assembly Plant ("KCAP"). *Id.* at pg. 12 (Pg. ID 302). KCAP is an assembly plant belonging to the Ford Motor Company. *Id.* Plaintiff's job involved work on a project in which he was required to carry out inspections on hardware that Continental supplied to Ford. *Id.* Plaintiff alleges that he was discriminated against, harassed, and treated disparately during his time at KCAP. *Id.* Plaintiff alleges that he promptly reported these incidents to management but management neglected to take action. *Id.*

In December of 2015, Plaintiff's supervisor Andrew Bayler and Human Resources Manager Jaime Fisk informed him that he was banned from the KCAP plant due to multiple grievances that had been filed against him. Dkt. No. 35-1, pg. 12 (Pg. ID 302). Defendant terminated Plaintiff on January 6, 2016. *Id.* at pg. 13 (Pg. ID 303). Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on July 21, 2016. *Id.* at pg. 32 (Pg. ID 322). The EEOC issued Plaintiff a Dismissal and Notice of Rights on April 26, 2017, giving Plaintiff 90 days to file suit in federal court. *Id.* at pg. 31 (Pg. ID 321).

Plaintiff filed his complaint in this Court on July 25, 2017. Dkt. No. 1. Plaintiff filed an amended complaint on December 1, 2017. Dkt. No. 24. On February 1, 2018, Plaintiff moved to file a second amended complaint. Dkt. No. 35. This Court referred the motion to Magistrate Judge R. Steven Whalen on

February 13, 2018. Dkt. No. 43. Magistrate Judge Whalen granted Plaintiff's motion to file a second amended complaint on February 15, 2018. Dkt. No. 44. Defendant filed its Motion for Summary Judgment on October 15, 2018. Dkt. No. 104. Plaintiff filed his initial response on November 15, 2018. Dkt. No. 108. Plaintiff then filed a corrected response on December 29, 2018. Dkt. No. 120. Plaintiff has filed numerous exhibits in support of his response, as well as declarations. Dkt. Nos. 111, 112, 113, 114, 115, 116, 117, 118. Defendant replied on November 27, 2018. Dkt. No. 119. On February 4, 2019, Plaintiff retained counsel. Dkt. No. 121. On March 14, 2019, Plaintiff, through counsel, moved to adjourn the hearing on Defendant's Summary Judgment Motion and to reopen discovery for 90 days. Dkt. No. 122. Defendant opposed Plaintiff's motion to adjourn on March 15, 2019, asserting that it was a delay tactic. Dkt. No. 123. This Court held oral argument on Defendant's Motion for Summary Judgment on March 18, 2019.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) governs summary judgment. The Rule states, "summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). "All factual inferences 'must be viewed in the light most favorable to the

party opposing the motion.'" *Id.* (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## IV. DISCUSSION

1. Wrongful Termination of Employment

The first count of Plaintiff's complaint alleges wrongful termination. Dkt. No. 35-1, pg. 13 (Pg. ID 303). The complaint states that on January 6, 2016, Jaime Fisk informed Plaintiff of his termination due to multiple grievances filed against him. *Id.* at pg. 14 (Pg. ID 304). The allegation in Count I does not allege or state anything further. *See id.*

Plaintiff states in his response to Defendant's Motion that inspections were suspended in November 2016 because the United Auto Workers ("UAW") filed a grievance based on violations of plant rules. Dkt. No. 120, pg. 12 (Pg. ID 5587). Plaintiff further states that the narrative of him being responsible for the first grievance is false. *Id.* at pg. 13 (Pg. ID 5588). However, Defendant acknowledges that both Plaintiff and Radim Urban, Plaintiff's inspection partner, did not follow

all of the UAW rules. Dkt. No. 104, pg. 21 (Pg. ID 2255). After the initial grievance, rules at the KCAP plant became stricter. *Id.* at pg. 22 (Pg. ID 2256). Two UAW members were required to be present during the inspections with Plaintiff. *Id.* Dawayne Gilley, Plaintiff's manager, told Plaintiff not to conduct inspections if no one showed up to do the inspections with him. *Id.*; Dkt. No. 104-2, pg. 32 (Pg. ID 2365). However, Plaintiff had already conducted the inspections without two union members present. *Id.* Mike Bayer, a Ford representative, was informed of Plaintiff's second violation. *Id.* Gilley spoke with Bayer and Bayer informed Gilley that Plaintiff needed to be terminated. *Id.* at pg. 33 (Pg. ID 2366). Gilley was obligated to follow Ford's wishes because Ford was Defendant's customer. Dkt. No. 104, pg. 23 (Pg. ID 2257).

The record presents testimony that Ford decided to terminate Plaintiff due to his multiple violations of the inspection policy. No evidence in the record refutes this testimony, except for Plaintiff's subjective allegations. Further, for the reasons discussed *infra*, the record does not support Plaintiff's allegations of discriminatory treatment as the motivation for his termination. This Court will therefore grant summary judgment in favor of Defendant on Count I.

2. Unequal Terms and Conditions of Plaintiff's Employment

Count Two alleges unequal terms of employment. Dkt. No. 35-1, pg. 14 (Pg. ID 304). Plaintiff asserts that Dawayne Gilley, the resident Continental staff at KCAP,

required Plaintiff to work the night shift even after Plaintiff had seniority over his Caucasian inspection partner, Brandon White. *Id.* at pgs. 14–16 (Pg. ID 304–06). Plaintiff's complaint states that he began conducting inspections with Radim Urban, a Caucasian male from the Czech Republic. *Id.* at pg. 14 (Pg. ID 304). Dawayne Giley assigned Urban to do the day inspections and Plaintiff to do the night inspections. *Id.* Gilley informed Plaintiff that Urban conducted the day inspections because Urban had seniority over Plaintiff. *Id.* Urban then went back to the Czech Republic, and Defendant assigned a new employee, Brandon White, to conduct inspections with Plaintiff. *Id.* at pg. 16 (Pg. ID 306). Brandon White is a Caucasian male. *Id.* Gilley assigned White to conduct the day inspections and Plaintiff to conduct the night inspections, even though Plaintiff had seniority over White. *Id.* Plaintiff asked Gilley why he was not doing the day inspections and Gilley responded by telling Plaintiff that he (Gilley) was in charge. *Id.*

Defendant argues that there was no seniority between the temporary employees at Continental. Dkt. No. 104, pg. 12 (Pg. ID 2246); Dkt. No. 104-2, pg. 27 (Pg. ID 2360). Further, Defendant states that it was essential for Urban to work the day shift because of the time difference with the Czech Republic, where he remained responsible for operations of a plant. Dkt. No. 104, pg. 12 (Pg. ID 2246); Dkt. No. 104-2, pg. 29 (Pg. ID 2362). Lastly, Defendant contends that White only assisted the inspections at KCAP for one week, and he had to work the day shift in order

for Gilley to train him. Dkt. No. 104, pgs. 12–13 (Pg. ID 2246–47); Dkt. No. 104-4, pg. 54 (Pg. ID 2460).

Count II of Plaintiff's complaint is fundamentally a claim of disparate treatment. Disparate treatments requires a plaintiff to demonstrate that an employer has treated him less favorably than others due to a protected trait, such as race or national origin. *Dunlap v. Tenn. Valley Auth.*, 519 F.3d 626, 630 (6th Cir. 2008). Courts analyze alleged discrimination under the *McDonnell-Douglas* framework. *Id.* Under the framework, (1) the plaintiff must establish a prima facie case of racial discrimination; (2) the employer must articulate some legitimate, nondiscriminatory reason for its actions; and (3) the plaintiff must prove that the stated reason was in fact pretextual." *Id.* A plaintiff can establish a prima facie case of discrimination by showing "(1) that he is a member of a protected group, (2) that he was qualified for the position at issue, and (3) that he was treated differently than comparable employees outside of the protected class." *Id.*

Proof of discriminatory motive is critical under a disparate treatment theory. *Id.* Discriminatory motive can be inferred from the fact that there was a difference in treatment, or "from the falsity of the employer's explanation for the treatment." *Id.*

Plaintiff establishes that he is a member of a protected group, that he was qualified for his job position, and that Defendant required him to work the night

shift while his white counterparts worked the day shift. However, Defendant articulates nondiscriminatory reasons that Urban and White worked the night shift. Urban was responsible for overseeing operations at a plant in the Czech Republic with a 7 or 8 hour time difference between the KCAP plant. White needed Gilley to train him, and Gilley worked during the day; therefore White was required to work the day shift with Gilley. Plaintiff does not bring forth evidence to establish that Defendant's reasons are pretext. Plaintiff has therefore failed to meet his burden of production to establish a claim of disparate treatment. Therefore, this Court will grant Defendant's Motion for Summary Judgment on Count II of Plaintiff's complaint.

3. Retaliation

Count Three alleges retaliation. Dkt. No. 35-1, pg. 16 (Pg. ID 306). Plaintiff alleges that Defendant placed him in a hostile work environment as a form of retaliation. *Id.* at pg. 17 (Pg. ID 307).

> To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) [he] engaged in activity protected by Title VII; (2) the defendant knew of [his] exercise of her protected rights; (3) the defendant subsequently took an adverse employment action against the plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment; and (4) there was a causal connection between the plaintiff's protected activity and the adverse employment action.

*Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2009). Plaintiff asserts that the protected activity he engaged in was reporting the racial discrimination and

disparate treatment that he faced at KCAP to Leon Koua, Jaime Fisk, Andrew Bayley, and Adrian Aguayo. Dkt. No. 120, pg. 30 (Pg. ID 5605). He states that after he reported the activity, Koua told him to follow Gilley's instructions and to lie low. *Id.* Plaintiff states that he was continuously demeaned, harassed, left to work without lunch, and treated disparately as a result of having to listen to Gilley. *Id.*

First, the record does not demonstrate that Defendant subjected Plaintiff to severe or pervasive retaliatory harassment. Plaintiff states that Gilley berated him for not driving a Ford and for not having a safety vest and goggles. Dkt. No. 35-1, pg. 19 (Pg. ID 309). However, the record does not establish that this treatment was severe or pervasive. Further, according to Plaintiff's own statement, he went without lunch on one occasion. Dkt. No. 120, pgs. 11–12, (Pg. ID 5586–87). This treatment also does not rise to the severe or pervasive level. For these reasons and for the reasons stated *infra*, this Court finds that the record does not establish that Defendant retaliated against Plaintiff. Summary Judgment is granted in favor of Defendant on Count III.

4. Harassment/Hostile Work Environment

The fourth count of the complaint alleges harassment. Dkt. No. 35-1, pg. 18 (Pg. ID 308). Plaintiff more specifically alleges hostile work environment in Count III of his complaint and in his response to Plaintiff's Motion for Summary

Judgment. *Id.* at pg. 17 (Pg. ID 307); Dkt. No. 120, pg. 19 (Pg. ID 5594). Plaintiff alleges that when he arrived at the KCAP plant, Dawayne Gilley began to complain that Plaintiff had parked in the wrong parking lot and that he was not driving a Ford vehicle. *Id.* at pg. 19 (Pg. ID 309). Gilley then began shouting at Plaintiff, telling him that he was "doing everything wrong" after Gilley realized that Plaintiff did not have a safety vest and goggles. *Id.* Plaintiff alleges before that point, no one ever told him that he needed a safety vest and goggles. *Id.* The complaint next states that one day Gilley asked Plaintiff if he had acquired a Ford vehicle yet. *Id.* at pg. 20 (Pg. ID 311). Plaintiff informed Gilley that the rental company did not have a Ford vehicle available, and Gilley began to shout at Plaintiff and said that he must get a Ford vehicle that day. *Id.* at pg. 21 (Pg. ID 311). Gilley then accompanied Plaintiff to get a Ford vehicle. *Id.* at pgs. 21–22 (Pg. ID 311–12).

Plaintiff's response to Defendant's Motion also alleges that in November of 2015, Gilley offered to get lunch for Radim Urban and Plaintiff. Dkt. No. 120, pg. 11 (Pg. ID 5586). Plaintiff states that Gilley brought Plaintiff a lunch that was "spilled" and contained ham; Plaintiff does not eat ham. *Id.* at pgs. 11–12, (Pg. ID 5586–87). Plaintiff's response next asserts that Gilley berated him by telling him not to talk to anybody, and just to conduct inspections. *Id.* at pg. 12 (Pg. ID 5587).

Plaintiff lastly alleges that in November of 2015 Gilley made an accusation of theft against him. *Id.*

Courts analyze discriminatory harassment under the hostile work environment standard. *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514 (6th Cir. 2009).

> To establish a prima facie case of a racially hostile work environment, a plaintiff must demonstrate that (1) [he] was a member of a protected class; (2) [he] was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with [his] work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable.

*Barrett*, 556 F.3d at 515. A hostile work environment is one that is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 514. Assessment of the fourth prong requires an examination of the totality of the circumstances. *Id.* at 515. Courts consider the frequency of the discriminatory conduct, the severity of the conduct, if the conduct was physically threatening or humiliating, if the conduct was merely an offensive utterance, and whether the conduct "unreasonably interfere[d] with an employee's work performance." *Id.*

Plaintiff has established that he is a member of a protected class. However, Plaintiff has not proved the other prongs of the prima facie case of hostile work environment. Nothing in the record, either direct or circumstantial, supports the proposition that Gilley's treatment of Plaintiff was because of Plaintiff's race or

national origin. Further, Plaintiff does not establish that any adverse treatment unreasonably interfered with his work. In contrast, Plaintiff asserts throughout his pleadings that he was an exemplary worker. *See* Dkt. No. 35-1, pg. 15, 27 (Pg. ID 305, 317); Dkt. No. 104-16, pgs. 3–4 (Pg. ID 2623–24). For these reasons, the Court will grant summary judgment in favor of Defendant on Plaintiff's Count IV.

5. Negligence

The fifth cause of action alleges negligence. Dkt. No. 35-1, pg. 24 (Pg. ID 314). Plaintiff alleges that Defendant was negligent in investigating the grievances that Plaintiff placed and also negligent in failing to reasonably supervise the Continental Resident staff at KCAP. *Id.* at pgs. 24–26 (Pg. ID 314–16). Defendant asserts that Plaintiff did not complain of discrimination until he filed his complaint with the EEOC. Dkt. No 119, pg. 2 (Pg. ID 5473).

To establish a prima facie case of negligence, a plaintiff must prove: "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Finazzo v. Fire Equip. Co.*, 918 N.W.2d 200, 210 (Mich. Ct. App. 2018).

Continental has a written policy prohibiting discrimination based on race or national origin. Dkt. No. 104-1, pg. 7 (Pg. ID 2273). Jaime Fisk, the Human Resources Coordinator, testified under oath that complaints of discrimination based on race or national origin are investigated. *Id.* at pg. 8 (Pg. ID 22774). Leon

Koua similarly testified that it was custom for harassment complaints to be reported to Human Resources and investigated. Dkt. No. 104-15, pgs. 3–5 (Pg. ID 2618–20). On December 17, 2015, Plaintiff wrote an email to Adrian Aguayo and Leon Koua about his removal from the KCAP plant. Dkt. No. 104-16, pgs. 3–4 (Pg. ID 2623–24). The letter described that he was unsure why he was removed from the plant because he always did what was required of him. *Id.* The letter does not mention discrimination as a reason for why Plaintiff believed he was removed. *Id.* Adrian Millan also testified that Plaintiff never informed him that Dawayne Gilley treated him differently because of his race. Dkt. No. 104-6, pg. 19 (Pg. ID 2504).

Plaintiff's complaint states that he informed Jaime Fisk and Andrew Bayley, his manager, about disparate treatment, harassment, and discrimination that he received from Gilley. Dkt. No. 35-1, pg. 25 (Pg. ID 315). Plaintiff alleges that Leon Koua "promised" to investigate the issue, but never did. *Id.* Plaintiff also asserts that he told Adrian Aguayo about the discrimination. *Id.* Aguayo told Plaintiff to send him his concerns via email, which Plaintiff did without response from Aguayo. *Id.* Plaintiff also maintains that he brought his discrimination complaints to Human Resources, and the department likewise failed to investigate his complaints. *Id.* Plaintiff's response to Defendant's summary judgment motion states the Koua failed to address his complaint of discrimination and did not report

it to HR. Dkt. No. 120, pg. 30 (Pg. ID 5605). However, Plaintiff's citations to the record do not point to any objective evidence of Plaintiff's claims. *See id.* Plaintiff's response also re-states that Aguayo asked him to send an email with his complaints of discrimination to which Plaintiff never received a response. *Id.* at pg. 32 9Pg. Id 5607). However, Plaintiff does not cite to any evidence in the record to support this claim.

"[D]istrict courts [are] not required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question. *Brooks v. Am. Broad. Companies, Inc.*, 999 F.2d 167, 172 (6th Cir. 1993). Here, Plaintiff alleges that he informed Fisk, Bayley, Koua, and Aguayo that Gilley subjected him to discrimination. However, nothing in the record supports this claim, except for Plaintiff's subjective testimony. Further, evidence in the record supports the conclusion that Plaintiff did not complain about racial or national origin discrimination until he filed his EEOC complaint. No evidence suggests that Defendant breached its duty to investigate claims of discrimination.

Plaintiff also alleges that Defendant was negligent in failing to supervise its staff at KCAP. However, Plaintiff cannot establish that Defendant breached its duty to supervise because the evidence does not support Plaintiff's discrimination allegations. *See* Section 2, Unequal Terms, *supra*.

For these reasons, the Court will grant summary judgment in favor of Defendant on Count V of Plaintiff's complaint.

6. Implied Contract

Count Six of Plaintiff's complaint alleges breach of implied contract. Dkt. No. 35-1, pg. 27 (Pg. ID 317). Plaintiff alleges that KCAP was a temporary project and that it was implied that his regular job at Continental would continue at the termination of the KCAP project. *Id.* Plaintiff asserts that he was in charge of at least one other project for Continental with a third-party company and that he had interviewed for other positions at Continental in Germany. *Id.* The complaint also states that one of Plaintiff's supervisors told him he was doing a "good job" at KCAP, which also presents evidence that an implied contract existed between the parties. *Id.*

A contract may be implied where (1) "there is a receipt of a benefit by a defendant from a plaintiff"; and (2) "retention of the benefits is inequitable, absent reasonable compensation." *Daimler-Chrysler Servs. N. Am., LLC v. Summit Nat., Inc.*, 289 F. App'x 916, 925 (6th Cir. 2008). Part of the rationale for implying a contract-in-law is to prevent unjust enrichment. *Id.*

Plaintiff presents no evidence and the record does not demonstrate the existence of an implied contract between the parties. Plaintiff was Defendant's at-will

employee. Dkt. No. 199, pg. 5 (Pg. ID 5476). Plaintiff does not present evidence in the record to establish an inequitable relationship existed in which Defendant was unjustly enriched. For these reasons, the Court will grant summary judgment in favor of Defendant on Count VI of Plaintiff's complaint.

7. Denial of Due Process

The last count of Plaintiff's complaint alleges that Defendant denied him due process by not following the internal rules and policies in investigating Plaintiff's complaints of discrimination. Dkt. No. 35-1, pg. 28 (Pg. ID 318). Plaintiff also asserts a denial of due process because Defendant terminated him "with cause." *Id.* This Court presumes that Count VII alleges procedural due process violations, considering that Plaintiff's complaint alleges grievance procedure violations and that Defendant failed to afford him "due process" before firing him. *Id.*

First, Plaintiff asserts that Defendant denied him due process by not properly investigating his complaints of discrimination. To establish a procedural due process claim, a plaintiff must demonstrate that: (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this interest; and (3) the *state* did not provide him with adequate procedural rights before depriving him of the property interest. *Crawford v. Benzie-Leenanau Dist. Health Dep't Bd. of Health*, 636 F. App'x 261, 266 (6th Cir. 2016) (emphasis added).

First, Plaintiff's employment was at-will and the record does not establish that he had a property interest in his employment. Second, Plaintiff's employment was not with the government. For these reasons, Plaintiff cannot sustain a procedural due process violation. Further, the record does not support Plaintiff's allegations that he complained to Defendant about Gilley's discrimination. *See* Section 5, Negligence, *supra*.

The second part of Count VII alleges a violation of due process because Defendant terminated him "with cause." However, Plaintiff was not a government employee; he was an at-will employee who could be terminated at any time for lawful reason. Dkt. No. 199, pg. 5 (Pg. ID 5476). Plaintiff does not dispute nor does he present evidence that his employment was not at-will. As such, he had no due process right in his employment. *Gregory v. Hunt*, 24F.3d 781, 785 (6th Cir. 1994) (an *at-will public* employee does not have a property interest in continued employment") (emphasis added).

Plaintiff cannot establish that he filed discrimination grievances against Dawayne Gilley or that he had a property interest in his continued employment. Defendant is therefore entitled to summary judgment on Count VII of Plaintiff's complaint.

## V. CONCLUSION

For the reasons discussed herein, the Court will grant Defendant's Motion.

SO ORDERED.

Dated: March 26, 2019

                                                     s/Gershwin A. Drain
                                                   HON. GERSHWIN A. DRAIN
                                                   United States District Court Judge

## CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 26, 2019, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager